**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **JOHNATHAN KILMER**, on behalf of himself and all others similarly situated, | **CASE NO. 1:19-CV-02660** |
| Plaintiff, | **JUDGE PAMELA A. BARKER** |
| -vs- | |
| **BURNTWOOD TAVERN HOLDINGS LLC d/b/a CHEF ART POUR RESTAURANT GROUP LLC**, an Ohio Corporation, et al., | **MEMORANDUM OF OPINION AND ORDER** |
| Defendants. | |

This matter comes before the Court upon the parties' cross-motions for conditional certification and Court-authorized notice to potential opt-in plaintiffs. On January 30, 2020, Defendants[1] filed a Motion for Conditional Certification and Court-Supervised Notice to Potential Opt-In Plaintiffs ("Defendants' Motion for Conditional Certification"). (Doc. No. 43.) Plaintiff Johnathan Kilmer, together with Opt-in Plaintiffs Erik Henderson and Marcus Collazzo (collectively, "Plaintiffs"), filed a brief in opposition to Defendants' Motion for Conditional Certification on February 13, 2020, to which Defendants replied on February 27, 2020. (Doc. Nos. 45, 46.)

---

[1] Defendants in this action are Burntwood Tavern Holdings LLC d/b/a Chef Art Pour Restaurant Group LLC, Burntwood Tavern Beachcliff LLC d/b/a Burntwood Tavern Rocky River LLC, Burntwood Tavern Belden Village LLC, Burntwood Tavern Bell Tower LLC, Burntwood Tavern Brecksville LLC, Burntwood Tavern Chagrin Falls LLC, Burntwood Tavern Crocker Park LLC, Burntwood Tavern Cuyahoga Falls, LLC, Burntwood Tavern Daytona LLC, Burntwood Tavern Fairlawn LLC, Burntwood Tavern Grand Oaks LLC, Burntwood Tavern Gulf Coast LLC, Burntwood Tavern Lyndhurst LLC, Burntwood Tavern Naples LLC, Burntwood Tavern North Olmsted LLC, Burntwood Tavern Solon LLC, M Italian LLC, Rose Italian Kitchen Cuyahoga Falls LLC d/b/a Leo's Italian Social, and Rose Italian Kitchen Solon LLC (collectively, "Defendants").

Plaintiffs filed their own Motion and Memorandum of Law for Conditional Certification and Notice Pursuant to 29 U.S.C. § 216(b) ("Plaintiffs' Motion for Conditional Certification") on January 30, 2020 as well. (Doc. No. 44.) Defendants filed a brief in opposition to Plaintiffs' Motion for Conditional Certification on March 2, 2020, to which Plaintiffs replied on March 16, 2020. (Doc. Nos. 47, 52.)

Also, currently pending is Plaintiffs' Motion for a Telephonic Hearing on the Parties' Cross Motions for Conditional Certification and Court-Authorized Notice to Potential Opt-In Plaintiffs ("Plaintiffs' Motion for a Hearing"). (Doc. No. 49.)

For the following reasons, Plaintiffs' Motion for a Hearing (Doc. No. 49) is DENIED, Defendants' Motion for Conditional Certification (Doc. No. 43) is GRANTED IN PART and DENIED IN PART, and Plaintiffs' Motion for Conditional Certification (Doc. No. 44) is GRANTED IN PART and DENIED IN PART.

**I. Background**

On November 13, 2019, Plaintiff Jonathan Kilmer filed a putative class and collective action against Defendants, setting forth claims for unpaid overtime compensation under the Fair Labor Standards Act ("FLSA") and Ohio law. (Doc. No. 1.) Plaintiffs allege that Defendants improperly classified Sous Chefs and other equivalent reporting level back of house positions as exempt from the requirements of the FLSA, and, as a result, failed to properly pay them overtime wages for hours that they worked in excess of forty hours per week. (*Id.* at ¶ 86.)

On January 15, 2020, the Court held a case management conference, during which the parties represented to the Court that they were working towards a stipulation regarding conditional certification of a collective action. (Doc. No. 42.) In the event the parties could not reach agreement

as to conditional certification, including proposed notice and consent forms, the Court directed that any motions for conditional certification be filed by January 30, 2020. (*Id.*)

Unfortunately, the parties were not able to reach a complete agreement within the time provided by the Court and filed their respective Motions for Conditional Certification. (Doc. Nos. 43, 44.) In their Motions for Conditional Certification, the parties agree and have both requested that the Court conditionally certify the following collective action class:

> Any current or former salary-paid Sous Chef or equivalent reporting level back of house position, however variously titled, who was paid by any of the Defendants as overtime exempt on a pay date within three years of the Court's order approving the notice to be sent to the conditionally certified class.

(Doc. No. 43 at 2, 6; Doc. No. 44 at 3.) Both parties also largely agree on the proposed notice procedures. (*See* Doc. Nos. 43-1, 44-1.) However, the parties dispute the propriety of permitting potential opt-in plaintiffs to submit electronically signed consent forms. They also disagree with respect to several aspects of the language to be included in the notice and consent forms that will be issued to potential opt-in plaintiffs, and Plaintiffs and Defendants have each submitted separate proposed notice and consent forms for which they seek the Court's approval. (*See* Doc. Nos. 44-1, 46-1.)

Plaintiffs have also requested a telephonic hearing to assist the Court in deciding these outstanding issues. (Doc. No. 49.)

**II. Analysis**

After conditionally certifying a collective action, a court "has the authority to supervise notice to potential plaintiffs." *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 870 (S.D. Ohio 2011). Generally, courts have "broad discretion over the notice's content." *Cowan v. Nationwide Mut. Ins. Co.*, No. 2:19-cv-1225, 2019 WL 4667497, at *10 (S.D. Ohio Sept. 25, 2019*); see also Kim v. Detroit*

3

*Med. Informatics, LLC*, No. 19-11185, 2019 WL 6307196, at *4 (E.D. Mich. Nov. 25, 2019) ("'The district court has discretion regarding the form and content of the notice' provided to potential opt-in FLSA plaintiffs.") (quoting *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 76 (E.D.N.Y. 2016)). However, courts should ensure that the notice is "timely, accurate, and informative," permits potential opt-in plaintiffs to "make informed decisions about whether to participate," and "avoid[s] even the appearance of judicial endorsement of the merits of the action." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170-74 (1989).

With these principles in mind, the Court addresses the parties' remaining disputes related to the notice to be issued to potential opt-in plaintiffs.[2]

### a. Defense Costs

In Defendants' initial proposed notice ("Defendants' Proposed Notice"), Defendants included a statement informing potential opt-in plaintiffs that if Defendants prevailed in the lawsuit, opt-in plaintiffs may be liable for Defendants' attorneys' fees. (Doc. No. 43-1 at 6.) After Plaintiffs objected to this statement, Defendants amended their proposed notice ("Defendants' Amended Proposed Notice") to instead indicate that opt-in plaintiffs may be liable for Defendants' costs if Defendants' prevailed in the case. (Doc. No. 45 at 4-7; Doc. No. 46 at 5; Doc. No. 46-1 at 3). Plaintiffs have not specifically objected to a reference to opt-in plaintiffs' potential liability for Defendants' costs, although Plaintiffs' proposed notice ("Plaintiffs' Proposed Notice") does not include any such statement. (*See* Doc. No. 44-1.)

---

[2] Having reviewed the parties' briefs, the Court finds a hearing on these issues unnecessary. Therefore, Plaintiffs' Motion for a Hearing is denied.

4

Multiple courts have approved the inclusion of a statement notifying potential opt-in plaintiffs that they may be responsible for the defendants' costs if the defendants prevail in the litigation, concluding that it would help potential opt-in plaintiffs make an informed decision about whether to participate in the action. *E.g.*, *Pop v. Permco, Inc.*, No. 5:19-cv-00659, 2019 WL 4154480, at *4 (N.D. Ohio Sept. 3, 2019) ("Defendants argue that the proposed notice shall include a statement that plaintiffs may be responsible for the Defendants' costs if the Defendants prevail in the litigation. . . . The Court finds that Defendants' request is a reasonable request and will provide putative members with a more complete understanding of the litigation that they are considering opting into."); *Gomez v. ERMC Prop. Mgmt. Co., LLC*, No. 3:13–cv–01081, 2014 WL 3053210, at *2 (N.D. Ohio July 7, 2014) ("I conclude that the inclusion of language indicating prospective plaintiffs may be liable for costs if ERMC prevails is appropriate to give prospective plaintiffs a clear understanding of the potential risks and rewards of opting in to this litigation.").

The Court likewise finds a statement to this effect appropriate to include to properly inform potential opt-in plaintiffs, but the notice should make clear that costs do not include attorneys' fees. *See Pop*, 2019 WL 4154480, at *4 ("[T]he language included shall clearly indicate that costs does not include attorney fees."). Thus, the Court will require the following language to be included in the notice to potential opt-in plaintiffs: "If you join this lawsuit and the Court ultimately concludes that Defendants are the prevailing party, you may be liable for a portion of Defendants' costs in this matter—not including Defendants' attorneys' fees."

### b. Discovery Obligations

Plaintiffs assert that the notice to potential opt-in plaintiffs need only include a short statement regarding opt-in plaintiffs' potential discovery obligations and that Defendants' proposed language

regarding potential discovery responsibilities is far too extensive and threatening. (Doc. No. 45 at 7-12.) Conversely, Defendants contend that a more in-depth description is necessary because extensive discovery of opt-in plaintiffs will be necessary to support Defendants' affirmative defense that Plaintiffs are exempt from the FLSA's overtime requirements. (Doc. No. 46 at 5-8.) Defendants argue that Plaintiffs' concerns over the chilling effect of Defendants' proposed language can be addressed by including a statement that "Plaintiff's attorneys will work with you so that this process is as convenient for you as possible." (*Id.* at 8.)

To prevent "chilling participation in the action," courts have typically required only a short statement notifying potential opt-in plaintiffs that they may be required to participate in discovery if they join the action. *Rodkey v. Harry & David, LLC*, No. 3:16-cv-311, 2017 WL 2463392, at \*6 (S.D. Ohio June 7, 2017) (ordering notice to include the following language: "While the suit is proceeding, you may be required to provide information, sit for depositions, and testify in court."); *see also Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2017 WL 3500411, at \*9 (S.D. Ohio Aug. 15, 2017) (holding notice should include a "statement that opt-in plaintiffs may be required to participate in written discovery and that they may be required to appear for deposition and/or trial"); *Ganci v. MBF Inspection Services, Inc.*, No. 2:15-cv-2959, 2016 WL 5104891, at \*7 (S.D. Ohio Sept. 20, 2016) ("[T]he notice shall include a short statement that opt-in plaintiffs may be required to participate in written discovery and that they may be required to appear for deposition and/or trial.").

Thus, the Court finds a short statement notifying potential opt-in plaintiffs that they may be required to participate in discovery is all that is required in this case. Defendants cite no authority in support of their argument that a more extensive description is justified by the presence of their

6

claimed affirmative defense, and the Court finds it unpersuasive. A single statement is enough to adequately inform potential opt-in plaintiffs of their potential responsibilities with regard to discovery. However, the Court also finds that Plaintiffs' proposed language with respect to opt-in plaintiffs' discovery obligations is inadequate, as it does not inform potential opt-in plaintiffs of the possibility that they would have to produce documents in their possession. Accordingly, the Court will modify Plaintiffs' proposed language and require the following statement to be included in the notice to potential opt-in plaintiffs: "While this suit is proceeding, you may be required to respond to written questions, produce documents, and/or provide testimony at a deposition and/or trial."

### c. Fee Arrangement

The parties originally proposed completely different language regarding how Plaintiffs' attorneys will be paid. (*See* Doc. No. 45 at 12-13.) While Defendants still claim that Plaintiffs' proposed language is confusing, Defendants now suggest using Plaintiffs' proposed language, but adding the following additional sentence to resolve any confusion: "The specifics of this fee arrangement is [sic] memorialized in a fee agreement and you may request a copy if you join the case." (Doc. No. 46 at 8-9; Doc. No. 46-1 at 3.)

The Court does not share Defendants' concern over the confusing nature of Plaintiffs' proposed language. Nonetheless, the Court has no issue with adding an additional sentence to the notice to this effect, and Plaintiffs do not appear to have any objection to it. Indeed, Plaintiffs' proposed consent form ("Plaintiffs' Proposed Consent Form") contains a similar statement. (*See* Doc. No. 44-1 at 10 ("I understand that I may obtain a copy of the contingency fee agreement by requesting it from Class Counsel.").) Therefore, Plaintiffs' proposed language is to be used, along with the following additional sentence: "The specifics of this fee arrangement are memorialized in a

fee agreement and if you join the case, you may obtain a copy of the fee agreement by requesting it from the Plaintiff's attorneys."

### d. Notice Heading

Defendants' Amended Proposed Notice contains the following heading on the first page: "Court-Authorized Notice From A Law Firm Offering Legal Representation." (Doc. No. 46-1 at 1.) Plaintiffs contend this heading is intended to make recipients believe that the notice is an advertisement from a lawyer, which they may be more likely to ignore, rather than a court-authorized notice informing them of their rights to participate in a collective action. (Doc. No. 45 at 13-14.) Plaintiffs instead propose a heading with the language "Court-Authorized Notice" and "This Is Not An Advertisement From A Lawyer" below it in parentheses. (Doc. No. 44-1 at 6.) Defendants object to this language as implying that the notice is an order from the Court, rather than an invitation, to join a lawsuit under the counsel of Plaintiffs' attorneys. (Doc. No. 46 at 10.)

The Court agrees with Plaintiffs that Defendants' proposed heading gives the impression that the notice is an advertisement. Moreover, the Court finds nothing improper about the title proposed by Plaintiffs. As such, Plaintiffs' proposed heading shall be used on the notice issued to potential opt-in plaintiffs.

### e. Electronic Signatures

Plaintiffs request that potential opt-in plaintiffs be permitted to electronically sign and submit their consent forms. Specifically, Plaintiffs propose that opt-in plaintiffs be able to submit electronically signed consent forms directly via an online portal maintained by a third-party notice administrator on a case specific notice website. (Doc. No. 44 at 4, 6-9.) Defendants object to this procedure, claiming Plaintiffs have failed to present sufficient information to ensure the Court of the

procedure's reliability and accuracy and that what Defendants believe will be a relatively small class in this case does not justify the additional expense. (Doc. No. 47 at 4-6.)

District courts in the Sixth Circuit regularly approve notice procedures in which potential opt-in plaintiffs may electronically sign and submit consent forms. *E.g.*, *Brandenburg*, 2017 WL 3500411, at *8 ("[T]he Court will permit potential opt-in plaintiffs to sign their Consent to Join forms electronically via the DocuSign website if they so choose."); *Conklin v. 1-800 Flowers.com, Inc.*, No. 2:16-CV-675, 2017 WL 3437564, at *6 (S.D. Ohio Aug. 10, 2017). These courts have typically found that forcing potential opt-in plaintiffs to print and sign their consent forms "force[s] potential opt-in plaintiffs to expend additional time and resources to join the instant lawsuit" and "serve[s] no purpose other than to discourage potential collective members from joining the litigation." *Brandenburg*, 2017 WL 3500411, at *8; *Kim*, 2019 WL 6307196, at *4 ("Requiring individuals to print and sign their Consent to Join forms and then submit the forms via regular U.S. mail would only serve to discourage potential collective members from joining the litigation and thus would not advance the purposes of the FLSA."). Moreover, "[c]ourts have not found electronic signatures for the purposes of FLSA necessarily less secure, authentic, or reliable," and "have consistently found electronic signatures appropriate and reliable, without a special need." *Fitzgerald v. P.L. Mktg., Inc.*, No. 2:17-cv-2251-SHM-cgc, 2017 U.S. Dist. LEXIS 182426, at *4 (W.D. Tenn. Oct. 25, 2017).

Accordingly, the Court concludes that Plaintiffs' proposed notice procedure is appropriate in this case. Defendants' vague objections based on reliability and accuracy are unpersuasive, and Plaintiffs need not demonstrate that the class will be particularly large in order to justify the use of electronic signatures.

9

### f. Non-Retaliation Provision

While the subject of some briefing, Defendants' Amended Proposed Notice and Plaintiffs' Proposed Notice both include substantially similar language notifying potential opt-in plaintiffs that Defendants may not retaliate against them for their participation in this action. (*See* Doc. No. 44-1 at 9; Doc. No. 46-1 at 3.) Thus, there is no dispute between the parties on this issue. Because the Court adopts Plaintiffs' Proposed Notice, with certain amendments based on the Courts' rulings above, Plaintiffs' proposed language regarding retaliation will be used.

### g. General Objections to Plaintiffs' Proposed Notice and Proposed Consent Form

Finally, Defendants argue that Plaintiffs' Proposed Notice and Proposed Consent Form are poorly drafted, confusing, and duplicative. (Doc. No. 47 at 2-3.) The Court disagrees and finds no issues with Plaintiffs' Proposed Notice and Proposed Consent Form beyond the few disputed issues noted above in which the Court found additional or modified language should be included.[3]

In addition, because significant edits would have to be made to Defendants' Amended Proposed Notice in order for it to conform to the Court's holdings on the issues above, particularly with respect to the submission of electronic signatures, the Court will deny Defendants' Motion for Conditional Certification with respect to Defendants' request to approve Defendants' Amended Proposed Notice and Proposed Consent Form. Instead, the Court will approve Plaintiffs' Proposed Notice and Proposed Consent Form, with the specific modifications described below.

---

[3] Defendants note in a footnote that Plaintiffs' Proposed Consent Form and Defendants' proposed consent form ("Defendants' Proposed Consent Form") are inconsistent. (Doc. No. 47 at 1 n.1.) However, neither party addresses the specific differences or makes any arguments with regard to them. The Court approves Plaintiffs' Proposed Consent Form, as it is essentially identical to a consent form previously approved in this District. (*See* Doc. No. 44-2 at 6.)

**III.   Conclusion**

For the reasons set forth above, Plaintiffs' Motion for a Hearing (Doc. No. 49) is DENIED, Defendants' Motion for Conditional Certification (Doc. No. 43) is GRANTED IN PART and DENIED IN PART, and Plaintiffs' Motion for Conditional Certification (Doc. No. 44) is GRANTED IN PART and DENIED IN PART, as follows.

THE COURT HEREBY ORDERS:

1. This case is conditionally certified as a collective action for purposes of sending notice of this lawsuit pursuant to 29 U.S.C. § 216(b) to all individuals who meet the following qualifications ("Putative Collective Members"):

    Any current or former salary-paid Sous Chef or equivalent reporting level back of house position, however variously titled, who was paid by any of the Defendants as overtime exempt on a pay date within three years of April 28, 2020.

2. The Court approves the Notice and Consent Form (Doc. No. 44-1) attached to Plaintiffs' Motion for Conditional Certification, subject to the following amendments. Before distributing the Notice and Consent Form, Plaintiffs shall:

    a. Under Section III of the Notice titled "Will My Participation Cost Me Anything? How Will the Lawyers Get Paid?", add the following sentence: "If you join this lawsuit and the Court ultimately concludes that Defendants are the prevailing party, you may be liable for a portion of Defendants' costs in this matter—not including Defendants' attorneys' fees."

    b. Under Section II of the Notice titled "How Do I Join & What Happens If I Do?", amend the sentence—"While this suit is proceeding, you may or may not be required

        to respond to written questions or provide testimony at a deposition and/or trial."—to read as follows: "While this suit is proceeding, you may be required to respond to written questions, produce documents, and/or provide testimony at a deposition and/or trial."

    c. Under Section III of the Notice titled "Will My Participation Cost Me Anything? How Will the Lawyers Get Paid?", add the following sentence at the end of the first paragraph: "The specifics of this fee arrangement are memorialized in a fee agreement and if you join the case, you may obtain a copy of the fee agreement by requesting it from the Plaintiff's attorneys."

3. Within fourteen (14) days of the date of this Order, Defendants shall provide Plaintiffs' counsel with a Microsoft Excel spreadsheet containing all Putative Collective Members' names, last known mailing addresses, last known personal email addresses, dates in relevant positions, and work locations. Prior to sending the Notice, the third-party administrator ("TPA") (who shall be selected and retained by Plaintiffs at their initial expense, without prejudice to seeking reimbursement, although Plaintiffs' counsel shall identify the TPA to the Defendants upon selection for informational purposes only) shall run the list of Putative Collective Members through the U.S. Postal Service's National Change of Address database ("NCOA"), and perform skip-tracing searches using public and proprietary electronic resources which collect data from various sources such as utility records, property tax records, motor vehicle registration records (where allowed) and credit bureaus. Defendants shall deliver to the TPA, after the execution of a confidentiality agreement agreed to by Plaintiffs' and Defendants' counsel, the full social security numbers for any Putative Collective Member

12

within seven (7) days of the TPA providing notice to the parties that (i) it has been unable to locate a current address for that Putative Collective Member using skip-tracing methods or (ii) it has received notification that the Notice documents were undeliverable. The TPA shall promptly perform skip tracing and reissue the Notice documents.

4. Within thirty (30) days of the date of this Order, the approved Notice and Consent Form shall be sent to the Putative Collective Members via First Class Mail (with enclosed self-addressed, stamped return envelope) and email by the TPA. The envelope for mailings shall include the TPA's mailing address, state "Court-Authorized Notice of Rights Included" and the lawsuit's caption and case number. The subject line for email distribution of Notice shall state "Court-Authorized Notice of Rights" and the lawsuit's caption and case number, and the body of the email will mirror the contents of the Notice with the Consent Form attached as a separate .pdf.

5. The Putative Collective Members shall have sixty (60) days from the date of the postmark or email timestamp of the Notice to submit their Consent Form to the TPA.

6. All Consent Forms submitted to the TPA will be promptly provided to Plaintiffs' counsel for filing with the Court. Consent Forms may be submitted to the TPA by mail, email, facsimile, or by submission of electronically signed Consent Forms directly via an online portal maintained by the TPA on its case-specific notice website.

7. Thirty (30) days after the initial issuance of the Notice to join this action, the TPA will re-send the notice in the same manner as the initial issuance to any Putative Collective Member who has not submitted their Consent Form (the "Second Notice"). The Putative Collective Members, if any, who receive the Second Notice shall have only thirty (30) days from the date of issuance of the Second Notice to submit their Consent to the TPA.

**IT IS SO ORDERED.**

Date:  April 28, 2020

      *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE